**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---------------------------------------------------------------x
:
MARIO CASTANO,                                      :   Civil Action No.: _____
:
      Plaintiffs,                                  :
:
v.                                                  :   **COMPLAINT**
:
LEX BRANDS LLC; SILBER CAPITAL LLC;                 :   **Jury Trial Demanded**
ISRAEL ZAHLER; SAMUEL SPIELMAN;                     :
JOHN/JANE DOES (1-10); and XYZ                      :
CORPORATIONS/ENTITIES (1-10),                       :
:
      Defendants.                                  :
---------------------------------------------------------------x

Plaintiff, MARIO CASTANO ("Plaintiff"), by and through his undersigned attorneys, hereby files this Complaint against Defendants LEX BRANDS LLC, SILBER CAPITAL, ISRAEL ZAHLER, SAMUEL SPIELMAN, JOHN/JANE DOES (1-10) and XYZ CORPORATIONS/ENTITIES (1-10) (collectively, the "Defendants") and states as follows:

## NATURE OF THE CASE

1. This action is based on Defendants' intentional retaliation against and wrongful termination of Plaintiff for disclosing, objecting to and refusing to participate in the Defendants' unlawful, unethical, and unsafe business practices.

2. Plaintiff alleges, pursuant to the anti-retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. 4:11-56a, *et seq.* ("NJWHL"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, *et seq.* ("NJLAD"), and the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:9-1, *et seq.* ("NJCEPA"), that he is entitled to recover damages from Defendants.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 as Defendants and Plaintiff reside in the District of New Jersey and the causes of action arose in the District of New Jersey.

## PARTIES

5. Plaintiff Mario Castano is a resident of the State of New Jersey, County of Cape May, and was, at all relevant times herein, an employee of Defendants LEX BRANDS LLC and SILBER CAPITAL LLC (hereinafter collectively referred to as the "Corporate Defendants").

6. Defendant LEX BRANDS LLC is a New York corporation registered to do business within the State of New Jersey with a principal place of business and address for service of process located at 401 Hackensack Avenue, Suite 801, Hackensack, New Jersey 07601.

7. At all relevant times, Defendant LEX BRANDS LLC was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA. Defendant's annual gross volume of sales or business done exceeded $500,000 during the relevant period.

8. Defendant LEX BRANDS LLC is a "covered employer" within the meaning of the FLSA and an "employer" within the meaning of the NJWHL.

9. Defendant SILBER CAPITAL LLC is a New York corporation registered to do business within the State of New Jersey with a principal place of business and address for service of process located 401 Hackensack Avenue, Suite 801, Hackensack, New Jersey 07601.

10. At all relevant times, Defendant SILBER CAPITAL LLC was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA. Defendant's annual gross volume of sales or business done exceeded $500,000 during the relevant period.

11. Defendant SILBER CAPITAL LLC is a "covered employer" within the meaning of the FLSA and an "employer" within the meaning of the NJWHL.

12. At all times relevant hereto, the Corporate Defendants employed Plaintiff, either jointly or separately, as a Director of Marketing and Operations Manager within the State of New Jersey.

13. Defendant ISRAEL ZAHLER ("Defendant Zahler") is a natural person engaged in business in Hackensack, New Jersey and an owner/operator of the Corporate Defendants. At all times relevant hereto, Defendant ZAHLER exercised sufficient control over the Corporate Defendants' operations to be considered Plaintiff's employer under the FLSA, NJWHL, NJLAD and NJCEPA. Defendant ZAHLER is personally, jointly and severally liable for the violations of the FLSA, NJWHL, NJLAD, and NJCEPA by the Corporate Defendants.

14. Defendant SAMUEL SPIELMAN ("Defendant Spielman") is a natural person engaged in business in Hackensack, New Jersey and an owner/operator of the Corporate Defendants. At all times relevant hereto, Defendant SPIELMAN exercised sufficient control over the Corporate Defendants' operations to be considered Plaintiff's employer under the FLSA, NJWHL, NJLAD and NJCEPA. Defendant SPIELMAN is personally, jointly and severally liable for the violations of the FLSA, NJWHL, NJLAD, and NJCEPA by the Corporate Defendants.

15. Defendants JOHN/JANE DOES (1-10) are fictitious names for persons yet unknown who are or may be liable for the acts complained of herein.

16. Defendants XYZ ENTITIES/CORPORATIONS (1-10) are fictitious names for entities/corporations as yet unknown who are or may be liable for the acts complained of herein.

## MATERIAL FACTS

17. On or about July 19, 2021, Defendants hired Plaintiff to the position of Director of Marketing & Operations.

18. Almost immediately upon commencing his employment, Plaintiff discovered that Defendants were out of compliance with various federal and state employment laws.

19. By way of example, and not of limitation, Defendants were misclassifying their hourly employees as "exempt" from overtime in violation of the FLSA and NJWHL.

20. Further, Defendants had no paid sick leave policy, in violation of New Jersey's paid sick leave law, N.J.S.A. 34:11D-1, *et seq*. In fact, Defendants had no written policies or employee handbook.

21. Plaintiff also began noticing that Defendants were engaging in unethical/fraudulent/deceptive and unsafe business practices.

22. By way of example, and not of limitation, Defendants were violating its licensing agreement with an entity called Obagi Clinical Skin Care ("Obagi") by reselling Obagi's products on unauthorized websites. Defendants were misrepresenting their license to sell Obagi products on these unauthorized websites to its consumers by doctoring invoices and forging letters of authenticity on Obagi's official letterhead.

23. Further, because many of the Obagi products that Defendants sold online on unauthorized websites were pharmaceutical grade, Plaintiff had a reasonable belief that the Defendants' selling of these products to consumers without a prescription violated federal law, including the Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301-392 ("FD&CA"), and constituted a danger to public health, safety and welfare.

24. In or around August 2021, Plaintiff reported these wage and hour violations, fraudulent/deceptive business practices and public health and safety concerns to Mordechai Leifer, the CFO of the Corporate Defendants ("Leifer"). Leifer pretended to be unaware of these issues and took no action.

25. Plaintiff then escalated his concerns regarding the wage and hour violations, fraudulent/deceptive business practices and public health and safety concerns to Defendant SPIELMAN. Defendant SPIELMAN specifically directed Plaintiff to take no action regarding these issues.

26. On or about August 30, 2021, Plaintiff prepared and presented a presentation to Defendant SPIELMAN and Jacob Glanz, the Corporate Defendants' Operations Project Manager ("Glanz"), in which Plaintiff disclosed and highlighted once again the Defendants' wage and hour violations, unethical/fraudulent/deceptive business practices, and conduct averse to the public health, safety and welfare. Defendants made no effort to change their unlawful, unethical and unsafe business practices.

27. On or about September 1, 2021, Plaintiff began recruiting a replacement Customer Service Representative and Marketplace Administrator at the direction of Defendants. Plaintiff posted the position and job description on Indeed.com and screened several qualified candidates.

28. Plaintiff recommended several qualified candidates for interviews to Glanz. Glanz disqualified all the qualified, educated, and diverse candidates Plaintiff recommended. Glanz told Plaintiff, "**I don't need someone with a degree or someone with experience but simply someone specifically female between the age of 22-27 that I can train to do exactly what I want.**"

29.     Plaintiff was concerned that the Company's disqualification of qualified job candidates based solely on their gender and age was discriminatory and in violation of federal and state law, including the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. ("Title VII") and the NJLAD. Plaintiff told Glanz that he objected to and opposed the Defendants' discriminatory hiring practices.

30.     On or about October 11, 2021, Plaintiff met separately with Defendants ZAHLER and SPIELMAN to discuss and hopefully resolve the outstanding issues pertaining to wage and hour violations, unethical/fraudulent/deceptive business practices, and risks to the public health, safety and welfare.

31.     In both meetings, Defendants told Plaintiff to disregard those issues.

32.     Plaintiff met with Defendant ZAHLER again on October 15, 2021, to follow up on their discussion from October 11, 2021.

33.     Plaintiff firmly reiterated the need to formally reclassify all the employees, come into compliance with federal and state wage and hour laws, stop the unlawful hiring practices, and cease violating the Obagi licensing agreement and misleading the public as to the Obagi products.

34.     Defendant ZAHLER informed Plaintiff, in so many words, that "it is my company, and I can run it however I want to."

35.     Defendants terminated Plaintiff's employment three (3) days later.

36.     After terminating Plaintiff's employment, Defendants cut off Plaintiff's access to his paystubs and refused to provide them to him, needlessly complicating Plaintiff's application for unemployment insurance ("UI") benefits. Because of Defendants' actions, Plaintiff's initial application for UI benefits was denied.

## COUNT ONE

### (Retaliation in Violation of the FLSA)

37. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

38. The FLSA prohibits any person from discharging or in any other manner discriminating against an employee because that employee has engaged in activity protected by the FLSA, including, but not limited to, making oral and written complaints that are intended to place an employer on notice of an ongoing FLSA violation.

39. Plaintiff engaged in conduct protected by the FLSA by making oral and written complaints to the Corporate Defendants' upper management team, including CFO Leifer, Defendant SPIELMAN, and Defendant ZAHLER, *inter alia*, that Defendants were misclassifying their hourly employees as "exempt" and failing to pay them overtime pay on an ongoing basis in violation of the FLSA.

40. Defendants terminated Plaintiff's employment, in whole or in part, in retaliation for his FLSA-protected activities.

41. Defendants' actions constitute retaliation in violation of the FLSA.

42. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including but not limited to lost income.

43. Defendants acted intentionally and with malice and reckless indifference to plaintiff's rights under the FLSA and are thereby liable to plaintiff for punitive damages under the FLSA.

## COUNT TWO

### (Retaliation in Violation of the NJWHL)

44. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

45. The NJWHL prohibits an employer from taking retaliatory action against an employee because that employee has engaged in activity protected by the NJWHL, including, but not limited to, making oral and written complaints that are intended to place an employer on notice of an ongoing NJWHL violation.

46. Plaintiff engaged in conduct protected by the NJWHL by making oral and written complaints to the Corporate Defendants' upper management team, including CFO Leifer, Defendant SPIELMAN, and Defendant ZAHLER, *inter alia*, that Defendants were misclassifying their hourly employees as "exempt" and failing to pay them overtime pay on an ongoing basis in violation of the NJWHL.

47. Defendants terminated Plaintiff's employment, in whole or in part, in retaliation for his NJWHL-protected activities.

48. Defendants' actions constitute retaliation in violation of the NJWHL.

49. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including but not limited to lost income.

50. Defendants' actions were malicious and/or undertaken in wanton and/or willful disregard of Plaintiff's rights, thus warranting the imposition of punitive damages.

## COUNT THREE

### (Retaliation in Violation of the NJLAD)

51. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

52. The NJLAD prohibits any person from taking reprisals against any person because that person has opposed any practices or acts forbidden under the NJLAD.

53. Plaintiff engaged in activity protected by the NJLAD by objecting to and opposing Defendants' discriminatory hiring practices, including, but not limited to, disqualifying qualified, diverse job applicants in favor of female applicants aged 22-27.

54. Defendants terminated Plaintiff's employment, in whole or in part, in retaliation for his NJLAD-protected activities.

55. Defendants' actions constitute retaliation in violation of the NJLAD.

56. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including but not limited to lost income, harm to his reputation, and emotional distress.

57. Defendants' actions were malicious and/or undertaken in wanton and/or willful disregard of Plaintiff's rights, thus warranting the imposition of punitive damages.

## COUNT FOUR

### (Retaliation in Violation of the NJCEPA)

58. Plaintiff repeats and realleges each and every paragraph of this Complaint as if recounted at length herein.

59. The NJCEPA prohibits an employer from taking any retaliatory action against an employee for disclosing, objecting to or refusing to participate in an activity, policy or practice of the employer that the employee reasonably believes is 1) in violation of a law, rule or regulation promulgated pursuant to law; 2) fraudulent or deceptive and may defraud any client, investor, customer, or employee of the employer; or 3) incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

60. Plaintiff reasonably believed that Defendants were engaging in activities, policies and practices which violated federal and state law, rules or regulations promulgated pursuant to law, including, but not limited to, the FLSA, NJWHL, NJLAD, New Jersey Paid Sick Leave Law, Title VII, and FD&CA.

61. The activities, policies, and practices included, but were not limited to:

    a. Misclassifying hourly employees as "exempt" in order to avoid paying them overtime pay;

    b. Engaging in discrimination in hiring by disqualifying qualified, diverse job applicants in favor of female applicants aged 22-27;

    c. Failing to maintain and/or implement a paid sick leave policy; and

    d. Selling pharmaceutical grade products to consumers online without prescriptions.

62. Plaintiff reasonably believed that Defendants were engaging in activities, policies and practices which were fraudulent or deceptive and may have defrauded its clients, investors, customers, employees and the public at large, including, but not limited to, violating Defendants' licensing agreement with Obagi by selling Obagi products on unauthorized websites and misleading the public that Defendants had a license to do so.

63. Plaintiff reasonably believed that Defendants were engaging in activities, policies and practices which were against public policy and a danger to the public health, safety and welfare, including, but not limited to, selling pharmaceutical grade products to consumers online without prescriptions.

64. Plaintiff blew the whistle by disclosing, objecting to and refusing to participate in the activities, policies and practices of the Defendants which Plaintiff reasonably believed to be unlawful, unethical/fraudulent/deceptive, or unsafe.

65. Defendants terminated Plaintiff's employment in retaliation for his protected whistleblowing activities.

66. Defendants' actions constitute retaliation under the NJCEPA.

67. As a result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer substantial losses, including but not limited to lost income, harm to his reputation, and emotional distress.

68. Defendants' actions were malicious and/or undertaken in wanton and/or willful disregard of Plaintiff's rights, thus warranting the imposition of punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

    a. A declaratory judgment that the practices complained of herein are unlawful and a violation under the FLSA, the NJWHL, the NJLAD and the NJCEPA;

    b. An injunction against Defendants from engaging in each of the unlawful policies and practices set forth herein;

c. A declaratory judgment that Defendants' violations of the FLSA, the NJWHL, the NJLAD and the NJCEPA were willful;

d. Directing Defendants to make Plaintiff whole for all earnings he would have received but for Defendants' discriminatory and unlawful treatment, including but not limited to, wages, health insurance and other fringe benefits, bonuses, pension, front-pay, and other lost employment benefits;

e. An award granting Plaintiff compensatory damages, damages for emotional distress and harm to reputation, liquidated damages, and punitive damages;

f. An award for pre-judgment and post- judgment interest;

g. An award to Plaintiff for reasonable attorneys' fees and costs pursuant the FLSA, the NJWHL, the NJLAD and the NJCEPA; and

h. Such other and further relief as this Court deems just, equitable and proper.

Dated: February 11, 2022

KOUTSOUDAKIS & IAKOVOU LAW GROUP, PLLC

By:  */s/ Steven Siegler*
_____
Steven Siegler, Esq. (SS-1224)
40 Wall Street, 49th Floor
New York, New York 10004
Tel.: (212) 404-8623
Fax: (332) 777-1884
*Attorneys for Plaintiff*